Petetin vs. His Creditors.

---

## No. 13,200.

JULES PETETIN VS. HIS CREDITORS; EX REL H. AND C. NEWMAN VS. JULES PETETIN, SYNDIC, TUTOR, ETC. CERTIFIED FROM THE COURT OF APPEALS, THIRD CIRCUIT, BY THE JUDGES THEREOF APPLYING FOR INSTRUCTIONS.

### SYLLABUS.

1st. WIFE A CREDITOR.—A wife, donee of her husband's creditor, may by the effects of the donation, become the creditor of her husband.

2nd. A SALE OF HUSBAND TO WIFE.—The wife had no mortgage, and could have no preference over her husbands creditors. The sale to her in satisfaction of her claim as a creditor, was not void, but voidable.

3rd. PRESCRIPTION.—Being voidable, it was subject to prescription.

4th. MINOR.—Prescription runs in favor of a minor, though he is not represented by a tutor.
The rule is that an interruption begins only when brought home to the parties affected by it.

5th. OWNER'S TITLE BY PRESCRIPTION.—The time having elapsed, the owners acquired by prescription.

*E. D. Estilette* for Jules Petetin.

*Kenneth Baillio* for H. and C. Newman.

Submitted May 12th, 1899.
Opinion handed down May 29th, 1899.
Rehearing refused June 29th, 1899. (Reasons assigned.)

The opinion of the court on the application for rehearing was delivered by WATKINS, J.

The opinion of the court was delivered by

BREAUX, J. The firm of H. & C. Newman, who are creditors of Jules Petetin, attack a *dation en paiement* made by him to his wife, on the following grounds:

1st. That the *dation en paiement* has no consideration, being a debt of the husband, which the creditor of Jules Petetin donated to his wife, Mrs. Petetin.

2nd. That the subsequent transfer or *dation* by the husband to his wife, in satisfaction of the debt, was a prohibited preference shown by the husband, who was an insolvent; that the facts are, that on the 3rd day of May, 1895, Hermina Petetin, maiden sister of Jules Petetin, made a donation *inter vivos* to Cora Renaud, wife of Jules Petetin, of a debt due by Jules Petetin to her.

It appears, May 13th, 1895, Jules Petetin made a *dation en paiement* to his wife of property he owned, (valued at the amount put down as a consideration for the *dation*), in satisfaction of the indebtedness held by the wife.

October 25, 1895, Jules Petetin made a cession of his property to his creditors. The usual order was issued accepting the surrender and staying proceedings against the insolvent.

The insolvent acknowledged the amount of his indebtedness to H. and C. Newman, and carried their claim on his statement of indebtedness.

The insolvent did not carry, on his statement of assets, the real estate transferred to his wife, on May 13, 1895.

A meeting of the insolvent's creditors was held on December 9th, 1895, at which H. and C. Newman voted against accepting the cession; against the discharge of the insolvent, and against the appointment of a syndic.

The proceedings were homologated on December 24th, 1895, without opposition.

Jules Petetin, the insolvent, qualified as syndic on December 30th, 1895.

On December 31st, 1895, H. and C. Newman filed their present suit.

Mrs. Jules Petetin having died and left minor children, issue of her marriage with Jules Petetin, he was appointed tutor *ad hoc,* to represent them. He qualified as tutor *ad hoc* on September 19, 1896.

Jules Petetin, personally, and as syndic, accepted service of the petition of H. and C. Newman, on the 2nd day of January, 1897.

It is conceded that the *dation en paiement* was a real contract, in the sense of not being simulated, and that Mrs. Petetin took possession of the property transferred to her, and that after her death, her heirs went into possession.

H. and C. Newman claimed to be paid by preference over the other creditors of the insolvent in case of the annullment of the *dation en paiement.*

The record informs us that the trial judge pronounced judgment annulling the *dation en paiement.* He decided, also, that the property should be restored to the mass of the insolvent's estate for the benefit of all the creditors, but that H. and C. Newman should be paid by preference from the proceeds of the property.

From the judgment, Jules Petetin, syndic, appealed to the Court of Appeals. The plea of presciption was filed on appeal before the Circuit Court.

The plea of prescription was rejected by the court, the court finding that service of the petition of H. and C. Newman had been accepted on the 2nd day of June, 1896, and that the *dation* was made on the 13th day of May, 1895, within the year. This was manifestly an oversight of the Court of Appeals.

The court found in the second place, that, after cession, no creditor can obtain a preference; that the wife is entitled to recover the amount of her claim as an ordinary creditor; and it amended the judgment to some extent.

On the application for a rehearing, the court reversed its opinion, and held that the wife and the heirs could interpose prescription. Owing to an error of dates of filing suits, and of acceptance of service, growing out of some oversight in listing the documents submitted on appeal, the court deemed it proper to grant a rehearing.

After the rehearing was granted, the court sent up to this court a statement of facts made by counsel and certified to by the court as correct; and requested our opinion on the following questions:

1st.   Was Mrs. Petetin an ordinary creditor, without privilege?

2nd.   Had the husband the right to transfer his property to his wife in satisfaction of his debt to a third person, of which the wife became the transferee and donee?

3rd.   Can the creditors, H. and C. Newman, attack the *dation* for fraud, and if successful, are they entitled to preference?

4th.   What prescription is applicable?

5th.   Had H. and C. Newman the preference over the proceeds of the property, under C. C., 1977?

1st.   Primarily, we deem it proper to state in answer to the foregoing that, in our view, Jules Petetin was indebted to his wife in the amount of the claim, of which his wife became the donee of one of her husband's creditors.

This claim was one in commerce.   Whatever value it had, the creditor chose to make a donation of it to the wife of the debtor, who was a free agent and able to accept donation to her, even of debts due by the husband.

In our view, she unquestionably was capable of receiving donations made to her, by a creditor of the husband.

There is no other incapacity to receive as a donee than an incapacity resulting from the text of the law.

It cannot be extended so as to embrace cases not clearly within the incapacity declared.

The Code, as relates to donations, contains dispositions on the subject:   "All persons may dispose or receive by donation *inter vivos* or *mortis causa,* except such as the law declares expressly incapable," as to the latter; "all persons may buy and sell except those interdicted by law."   C. C. 1470.   Ib. 2445.

Regarding the wife, we have not found any text of the law by which she is excluded from receiving in an honorable transaction, a claim for the payment of which the husband is responsible.

There being no prohibitory law upon the subject, it follows that she may become the husband's creditor, as donee of a claim against him.

In Slatter vs. Tete, 4th Ann., 465, the principle involved on this point, we think, was similar to the principle involved in the case

here, in that a claim was transferred to the wife, which was a pre-existing debt of the husband. The court said that it bore neither privilege nor mortgage; that it seemed to be a paradox; that by the transfer of his note to his wife and its delivery to the husband, this debt should be invested with the real security of a mortgage, to the detriment of other creditors. "A construction which would operate this injustice, we cannot adopt. The abuses to which it would give rise are an insuperable objection to its soundness."

"The object of the law is to protect married women and not enable them to wrong their husband's creditors." The circumstances of the case were such as to throw upon Mrs. Tete the burden of "showing the solvency of her husband," but it was found that the wife was none the less a creditor, although it was said "*the debt* bore neither privilege nor mortgage, and the only security the debtor had consisted in the means and the will of his debtor to pay." (Italics ours).

Again, in Eager vs. Brown, 14th Ann., 697, the court held:

"When property of the wife is sold in a foreign State, and the proceeds thereof are received by the husband in that State, the wife has no privilege upon the property of her husband in Louisiana for the same."

"But the husband was trustee, he is therefore *personally liable to the defendant for the proceeds so received by him;* but in a contest with creditors, this personal liability to the wife must yield to the right of the creditors of the husband." (Italics ours).

This, in our view, amply sustains the conclusion that the wife may become the creditor of the husband under a donation as made in this case.

2nd. We pass to the next question, viz: Had the husband the right to transfer his property to his wife in satisfaction of a pre-existing claim against him, of which the wife became the trans-feree?

It is well settled that the husband and wife are incapable of contracting toward each other, save when the contract is within the enumerated exceptions. 2446 C. C., 1790 C. C.

The exception applying here is contained in the second paragraph of the first article cited. It reads: "When the transfer made by the husband to his wife, even though not separated, has a legitimate cause, as the replacing of her dotal or other effects alienated," a sale may be made in satisfaction of the claim.

Ordinarily, the husband having received the price of property sold by his wife, or having received an amount due his wife from any other source, may make a transfer to her in payment.

The husband is then authorized under the terms of the article to reinvest the sum in her name.

But here the husband had not received the amount at all, and it, in consequence, became a matter of some difficulty to determine whether it was still possible to make a transfer in satisfaction of the claim due by him to the wife, donee of one of his creditors.

There are contracts regarding debts not within the power of the husband to make. Bandry-Lacantinerie, Vol. 3 p. 299, mentions the following as one of the number:

"Enfin, le mari ne pourrait pas vendre un immeuble a sa femme a la charge par celle ci de payer certaines dettes dont il est tenu envers des tiers."

True, in such a case, a valid sale is an impossibility, but here the wife is a creditor in good faith. Why may she not buy from her husband to satisfy her claim? We think she can, just as any other creditor may buy, subject to the law prohibiting sales that would give her an advantage over other creditors.

But we are convinced that the husband who is in a state of insolvency, has no right to make to his wife a *dation en paiement* that will not come within the grasp of the revocatory action authorized by Art. 1970 *et seq.*, of the Civil Code. But the right to bring the action, in our view, is subject to the prescription of twelve months, applying to that action.

3rd. This being our view of the issues thus far, the plea of prescription of one year presents itself for consideration and decision, the question being: What prescription is applicable, and when did it begin to run against the right of action of H. and C. Newman to annul the action for fraud? The prescription of one year is the prescription in our judgment, and it began from the day of the sale to the wife.

If the *dation* was an absolute nullity, it does not come within the curative effects of the prescription.

If only a relative nullity, as we take it, the creditors lose any right they may have to have the *dation* decreed null after twelve months.

We have found no decision of the court bearing directly upon this point.

The corresponding articles of the French Code are similar to ours. From Dalloz, p. 141, vol. 43, section 441, we quote: "La nullite resultant de l'inobservation de l'art. 1595, (2446 of our Code), n'est pas une nullite radicale; c'est une rescision pour vice d'incapacite, qui ne peut entre 'demande par les ayants droit que pendant le delai de dix ans, aux termes de l'art. 1304."

The nullity was, in our view, a relative nullity, as shown by French commentators on the subject. It was as such subject to the attack of the creditors within twelve months.

We understand that the prescription of ten years only operates as a bar to a revocatory action in France. Fuzier Hermann, vol. 3, p. 244. N.—20.

While the title was subject to attack during twelve months from its date, we think, after that time, creditors could not set up the nullity.

The creditors here claim that the suit was brought within twelve months.

This is a question of fact, and it is a fact that the twelve months had elapsed.

4th. The creditors contend that their suit was timely enough, for the reason that it was brought within twelve months after the syndic had been appointed.

This is not our view of the law. Prescription was not suspended. The minors who succeeded to the interest of their mother, who was the vendee, were the proper parties to the suit, and could have been sued at any time, without regard to whether a syndic had been or had not been appointed.

For reasons assigned, it is, therefore, ordered, adjudged and decreed in this case, that the *dation en paiement* made by Jules Petetin to his wife on the 13th of May, 1895, is cured by the prescription of twelve months, and that the sale, as relates to creditors, became valid after the expiration of that time; and the case is remanded in order that it may be tried in accordance with the views before expressed.

## ON APPLICATION FOR REHEARING.

WATKINS, J.   H. & C. Newman are creditors of Jules Petetin, and brought a revocatory action for the annulment of a *dation en paiement* made by him to his wife, on the ground that said *dation* was

without consideration, and a prohibited preference by the husband, who was insolvent.

It appears from the record that Hermina Petetin, maiden sister of Jules Petetin, made a donation *inter vivos* to Cora Renaud,, wife of Jules Petetin, on the 3rd of May, 1895, of a debt due by Jules Petetin to her.

That on May 13th, 1895, Jules Petetin made a *dation en paiement* which is attacked, to his wife, of certain property, in satisfaction of the aforesaid indebtedness.

That on October 25, 1895, Jules Petetin made a cession of his property to his creditors, and acknowledged the debt of H. & C. Newman; but the schedule of assets did not carry the real estate which had been previously transferred to his wife.

Mrs. Jules Petetin, having died, leaving minor children, issue of her marriage with Jules Petetin, he was appointed and qualified tutor, on September 19th, 1896.

The revocatory action of H. & C. Newman having been filed, Jules Petetin, personally, and as syndic, accepted service of the petition of H. & C. Newman, on the 2nd day of June, 1897—more than twelve months subsequently to the cession of Jules Petetin.

It is conceded that the *dation en paiement* was a real contract, in the sense of not being simulated, and that Mrs. Petetin took possession of the property transferred to her, and that after her death, her heirs went into possession.

H. & C. Newman claimed to be paid by preference over the creditors of the insolvent from the proceeds of the sale of said property in case of the annulment of the *dation en paiement,* and the District Court so held; and from that judgment the syndic appealed to the Court of Appeals, in which a plea of prescription was filed and rejected.

In our opinion, we said: "We deem it proper to state in answer to the foregoing, that, in our view, Jules Petetin. was indebted to his wife in the amount of the claim, of which his wife became the donee of one of her husband's creditors.

"This claim was one in commerce. Whatever value it had, the creditor chose to make a donation of it to the wife of the debtor, who was a free agent to accept donations to her, even of debts due by the husband."

But while holding that it is well settled that the wife of Jules Petetin had legally acquired the claim of his sister against him by

the donation, we held that "it is settled that the husband and wife are incapable of contracting toward each other, save when the contract is within the enumerated exceptions to Revised Civil Code 2446 and 1790," and consequently, held that the *dation en paiement* of Jules Petetin to his wife did not have "a legitimate cause, as the replacing of her dotal or other effects alienated."

Or, in other words, "ordinarily, the husband having received the price of property sold by his wife, or having received an amount due his wife from any other source, may make a transfer to her in payment of it.

"The husband is then authorized under the terms of the article to reinvest the sum in her name.

"But here, the husband had not received the amount at all, and it, in consequence, became a matter of some difficulty to determine whether it was still possible to make a transfer in satisfaction of the claim due by him to the wife as donee of one of his creditors.

\*          \*          \*          \*          \*          \*          \*          \*

"But we are convinced that the husband who is in a state of insolvency, has no right to make his wife a *dation en paiement* that will not come within the grasp of the revocatory action authorized by Article 1970 *et seq.* of the Civil Code."

But, notwithstanding our opinion entertained and announced that theory, we further held that "the revocatory action in such a case is subject to the prescription of twelve months."

In the application for rehearing, the principal question discussed is, as to whether a contract of sale between husband and wife in any other case than that embraced within one of the exceptions of Revised Civil Code 2446, is or not an absolute nulilty; and the contention of counsel is, that the authorities show that the aforesaid nullity is absolute, and therefore, contend that this case is· not brought within the purview of Revised Civil Code 1994, limiting the revocatory action to one year.

Having examined that question with care, our conclusion is, that the special provisions of the Code applicable to a revocatory action are governed by the prescription of one year, regardless of the character of the nullity in the sale attacked.

Under the title of the Code, "what contracts shall be avoided by persons not parties to them," it says, that "contracts considered with respect to their operation on property, either purport to transfer

ownership, or to give some determinate right upon it." Rev. Civil Code, 1968.

Consequently, it is of the essence of the revocatory action that the suit must be instituted by a person who is not a party to the contract assailed.

It is further provided, that "from the principle established by the last preceding article, it results that *every act* done by a debtor with the intent of depriving his creditor of the eventual right he has upon the property of such debtor is illegal, and ought, as respects such creditor, to be avoided. This can be done in the mode and under the circumstances set forth in the following rules." Revised Civil Code 1969.

"The law gives to every creditor * * * an action to annul any contract made in fraud of their rights." R. C. C. 1970.

"This action can only be exercised when the debtor has not property sufficient to pay the debts of the complaining creditor." R. C. C. 1971.

Again:

"No contract shall be avoided by this action, but such as are made in fraud of creditors, and such as, if carried into execution, would have the effect of defrauding them." R. C. 1978.

From the foregoing we gather that the law gives to persons who are not parties thereto, a right to institute a revocatory action to annul any contract made in fraud of their rights; but same cannot be instituted for the purpose of revoking a fraudulent contract, if the debtor has sufficient property to discharge the debt of the complaining creditors.

"If the contract be purely gratuitous, it shall be presumed to have been made in fraud of creditors, if at the time of making it, the debtor had not over and above the amount of his debts, more than twice the amount of the property passed by such gratuitous contract." R. C. C. 1980.

This positive declaration of the Code clearly shows that even purely gratuitous contracts, those wholly without any consideration, come with the purview of this action."

"Not only contracts which dispose of property, but all others which are made in fraud of creditors, and deprive them of their recourse to the property of their debtor, come within the provisions of this section." R. C. C. 1989.

We have enumerated the foregoing provisions of the Code for the purpose of showing that they control the creditors' right of action to

have annulled a contract to which he is not a party, in order to subject the property disposed of to the payment of his claim, and that it is not the particular character of nullity or fraud in the contract, that controls the action.

This is clearly shown by the provisions of the article which prescribe the limit within which the action must be brought, to-wit:

"The action given by this section—'what contracts shall be avoided by this action'—is limited to one year; if brought by a creditor individually, to be counted from the time he has obtained judgment against the debtor; if brought by syndic or other representatives of the creditor collectively, to be counted from the day of their appointment." R. C. C. 1994.

The provisions of this article are certainly broad enough, and in terms were intended to embrace all contracts which can be avoided by this action.

The instant suit having been brought by way of opposition in the insolvency of Jules Petetin, claim is made that the twelve months should be counted from the day of the syndic's appointment.

Our conclusion is, that the opposition not having been filed within the twelve months' limit specified, it came too late, and that the plea of twelve months' prescription was properly sustained, and that without regard to the character of the nullity in the contract, of which the creditor complains.

In passing upon the plea of prescription, we have only to look to, and deal with the character of the *action*, and not to the character of the nullity complained of in the act; and finding the action to be revocatory, it must be subjected to the rule of prescription which is applicable thereto.

Rehearing refused.